MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
NEFTALI BATEN, NICHOLAS ALVAREZ,
and RAUL SERRANO, *individually and on*
*behalf of others similarly situated,*

*Plaintiffs*,

-against-

MVNBC CORP.  (D/B/A BENVENUTO
CAFE), PERRY MALLAS, and BILLY
MALLAS,

*Defendants.*

-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Neftali Baten, Nicholas Alvarez, and Raul Serrano, individually and on behalf of

others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael

Faillace & Associates, P.C., upon their knowledge and belief, and as against MVNBC CORP.

(d/b/a Benvenuto Cafe), ("Defendant Corporation"), Perry Mallas and Billy Mallas, ("Individual

Defendants"), (collectively, "Defendants"), allege as follows:

**NATURE OF ACTION**

1.      Plaintiffs are former employees of Defendants MVNBC CORP. (d/b/a Benvenuto

Cafe), Perry Mallas, and Billy Mallas.

2.       Defendants own, operate, or control a cafe, located at 369 Greenwich St, New York,

NY 10013 under the name "Benvenuto Cafe".

3.     Upon information and belief, individual Defendants Perry Mallas and Billy Mallas, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.     Plaintiffs were employed as delivery workers, food preparers, and dishwasher at the restaurant located at 369 Greenwich St, New York, NY 10013.

5.     Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to peeling potatoes, peeling carrots, filling up the fridge with beverages, wiping down the tables, mopping and sweeping floors, taking out the garbage, washing dishes, stocking sodas, and cleaning the grill (hereafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage compensation for the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked at the straight rate of pay.

8.     Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

9.     Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     Regardless, at all relevant times, Defendants paid Plaintiffs at the tip-credited rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of

disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

13.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work without providing the minimum wage compensation required by federal and state law and regulations.

15.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wage pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a cafe located in this district. Further, Plaintiffs were employed by Defendants in this district.

**PARTIES**

*Plaintiffs*

19.     Plaintiff Neftali Baten ("Plaintiff Baten" or "Mr. Baten") is an adult individual residing in Queens County, New York.

20.     Plaintiff Baten was employed by Defendants at Benvenuto Cafe from approximately November 7, 2017 until on or about August 6, 2021.

21.     Plaintiff Nicholas Alvarez ("Plaintiff Alvarez" or "Mr. Alvarez") is an adult individual residing in Queens County, New York.

22.     Plaintiff Alvarez was employed by Defendants at Benvenuto Cafe from approximately January 1, 2020 until on or about March 2020 and from approximately June 2020 until on or about August 6, 2021.

23.     Plaintiff Raul Serrano ("Plaintiff Serrano" or "Mr. Serrano") is an adult individual residing in Kings County, New York.

24.     Plaintiff Serrano was employed by Defendants at Benvenuto Cafe from approximately November 2019 until on or about April 2021.

*Defendants*

25.     At all relevant times, Defendants owned, operated, or controlled a cafe, located at 369 Greenwich St, New York, NY 10013 under the name "Benvenuto Cafe".

26.     Upon information and belief, MVNBC CORP. (d/b/a Benvenuto Cafe) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 369 Greenwich St, New York, NY 10013.

27.     Defendant Perry Mallas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Perry Mallas is sued individually

- 4 -

in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Perry Mallas possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.     Defendant Billy Mallas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Billy Mallas is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Billy Mallas possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

29.     Defendants operate a cafe located in the Tribeca section of Manhattan in New York City.

30.     Individual Defendants, Perry Mallas and Billy Mallas, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

31.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

33.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

34.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

35.     Upon information and belief, Individual Defendants Perry Mallas and Billy Mallas operate Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of their own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

36.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

37.     In each year from 2017 to 2021, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

39.     Plaintiffs are former employees of Defendants who were employed as food preparer and dishwasher and ostensibly as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

40.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Neftali Baten*

41.     Plaintiff Baten was employed by Defendants from approximately November 7, 2017 until on or about August 6, 2021.

42.     Defendants employed Plaintiff Baten as a cleaner and ostensibly as a delivery worker.

43.     However, Plaintiff Baten was also required to spend a significant portion of his work day performing the non-tipped duties described above.

44.     Although Plaintiff Baten ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

45.     Plaintiff Baten regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.     Plaintiff Baten's work duties required neither discretion nor independent judgment.

47.     From approximately November 17, 2017 until on or about December 31, 2017, Plaintiff Baten worked from approximately 5:00 p.m. until on or about 10:00 p.m., 5 days a week (typically 25 hours per week).

48.     From approximately January 1, 2018 until on or about August 6, 2021, Plaintiff Baten worked from approximately 3:00 p.m. until on or about 10:00 p.m., 6 days a week (typically 42 hours per week).

49.     From approximately November 1, 2017 to November 30, 2017, Defendants paid Plaintiff Baten his wages in cash.

50.     From approximately December 1, 2017 until on or about August 6, 2021, Defendants paid Plaintiff Baten his wages by check.

51.     From approximately November 1, 2017 until on or about December 31, 2017, Defendants paid Plaintiff Baten $9.85 per hour.

52.     From approximately January 1, 2018 until on or about December 31, 2018, Defendants paid Plaintiff Baten $10.85 per hour.

53.     From approximately January 1, 2019 until on or about August 6, 2021, Defendants paid Plaintiff Baten $12.50 per hour.

54.     Although Defendants granted Plaintiff Baten 30-minute meal periods, they constantly interrupted those breaks by requiring Plaintiff Baten to go back to work.

55.     In addition, Defendants deducted $25 from Plaintiff Baten's weekly paycheck for meals they only provided him some days.

56.     Plaintiff Baten was never notified by Defendants that his tips were being included as an offset for wages.

57.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Baten's wages.

58.     Defendants did not provide Plaintiff Baten an accurate statement of wages, as required by NYLL 195(3).

59.     Defendants did not give any notice to Plaintiff Baten, in English and in Spanish (Plaintiff Baten's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

60.     Defendants required Plaintiff Baten to purchase "tools of the trade" with his own funds—including bicycle maintenance once a month.

*Plaintiff Nicholas Alvarez*

61.     Plaintiff Alvarez was employed by Defendants from approximately January 1, 2020 until on or about March 2020 and from approximately June 2020 until on or about August 6, 2021.

62.     Defendants ostensibly employed Plaintiff Alvarez as a delivery worker.

63.     However, Plaintiff Alvarez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

64.     Although Plaintiff Alvarez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

65.     Plaintiff Alvarez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

66.     Plaintiff Alvarez's work duties required neither discretion nor independent judgment.

67.     From approximately January 2020 until on or about March 2020 and from approximately June 2020 until on or about August 6, 2021, Plaintiff Alvarez worked from approximately 4:00 p.m. until on or about 10:00 p.m., Mondays through Saturdays (typically 33 hours per week).

68.     Throughout his employment, Defendants paid Plaintiff Alvarez his wages by check.

69.     From approximately January 2020 until on or about August 6, 2021, Defendants paid Plaintiff Alvarez $12.50 per hour.

Although Defendants granted Plaintiff Alvarez 30-minute meal periods, they constantly interrupted these breaks by requiring Plaintiff Alvarez to go back to work.

70.     Nevertheless, Defendants deducted 30 minutes from Plaintiff Alvarez's weekly paycheck for meal breaks he was not always allowed to take.

71.     In addition, Defendants deducted $25 from Plaintiff Alvarez's weekly paycheck for meals they only provided him some days.

72.     Plaintiff Alvarez was never notified by Defendants that his tips were being included as an offset for wages.

73.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Alvarez's wages.

74.     Defendants required Plaintiff Alvarez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

75.     On a number of occasions, Defendants required Plaintiff Alvarez to sign a document, the contents of which he was not allowed to review in detail.

76.     Defendants did not provide Plaintiff Alvarez an accurate statement of wages, as required by NYLL 195(3).

77.     Defendants did not give any notice to Plaintiff Alvarez, in English and in Spanish (Plaintiff Alvarez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

78.     Defendants required Plaintiff Alvarez to purchase "tools of the trade" with his own funds—including one electric bicycle, one helmet and one vest.

*Plaintiff Raul Serrano*

79.     Plaintiff Serrano was employed by Defendants from approximately November 2019 until on or about April 2021.

80.     Defendants employed Plaintiff Serrano as a food preparer and ostensibly as a delivery worker.

81.     However, Plaintiff Serrano was also required to spend a significant portion of his work day performing the non-tipped duties described above.

82.     Although Plaintiff Serrano ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

83.     Plaintiff Serrano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

84.     Plaintiff Serrano's work duties required neither discretion nor independent judgment.

85.     From approximately November 2019 until on or about January 31, 2020, Plaintiff Serrano worked from approximately 6:00 a.m. until on or about 2:00 p.m., 4 days a week (typically 32 hours per week).

86.     From approximately February 2020 until on or about March 2020, Plaintiff Serrano worked a range of approximately 24.28 to 31 hours a week.

87.     From approximately March 2020 until on or about April 2021, Plaintiff Serrano worked from approximately 12:00 p.m. until on or about 4:00 p.m., 6 days a week (typically 24 hours per week).

88.     Throughout his employment, Defendants paid Plaintiff Serrano his wages by check.

89.     From approximately November 2019 until on or about April 2021, Defendants paid Plaintiff Serrano $12.50 per hour.

90.     Plaintiff Serrano's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

91.     For example, Defendants required Plaintiff Serrano to work an additional 1 hour past his scheduled departure time twice a month, and did not pay him for the additional time he worked.

92.     Defendants never granted Plaintiff Serrano any breaks or meal periods of any kind.

93.     Nevertheless, Defendants deducted 30 minutes from Plaintiff Serrano's weekly paycheck for meals he never ate.

94.     In addition, Defendants deducted $25 from Plaintiff Serrano's weekly paycheck for meals they only provided him some days.

95.     Plaintiff Serrano was never notified by Defendants that his tips were being included as an offset for wages.

96.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Serrano's wages.

97.     Although Plaintiff Serrano was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Serrano was not compensated for all of the hours that he worked.

98.     On a number of occasions, Defendants required Plaintiff Serrano to sign a document, the contents of which he was not allowed to review in detail.

99.     Defendants did not provide Plaintiff Serrano an accurate statement of wages, as required by NYLL 195(3).

100.    In fact, Defendants adjusted Plaintiff Serrano's paystubs so that they reflected inaccurate wages and hours worked.

101.    Defendants did not give any notice to Plaintiff Serrano, in English and in Spanish (Plaintiff Serrano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

102.    Defendants required Plaintiff Serrano to purchase "tools of the trade" with his own funds—including 1 bike, 1 vest. and bike maintenance.

*Defendants' General Employment Practices*

103.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in without paying them appropriate minimum wage as required by federal and state laws.

104.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

105.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

106.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

107.     Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

108.     Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

109.     Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

110.     Plaintiffs and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

111.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

112.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

113.     In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

114.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

115.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

116.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Baten worked.

117.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

118.     On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

119.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

120.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

121.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

122.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

123.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

124.    Plaintiffs bring their FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

125.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage under the FLSA, and willfully failing to keep records under the FLSA.

126.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## **FIRST CAUSE OF ACTION**

### **VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA**

127.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

128.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

129.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

130.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

131.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

132.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

133.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE NEW YORK MINIMUM WAGE ACT**

134.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

135.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

136.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

137.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

138.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

139.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the

physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

140.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

141.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

142.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

143.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

144.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

145.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs,

further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. §

531.35; N.Y. Lab. Law §§ 193 and 198-b.

146.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

147.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

148.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of

the N.Y. Lab. Law §§ 2 and 651.

149.     Defendants made unlawful deductions from Plaintiffs' wages including, but not

limited to, deductions for meals they never ate.

150.     The deductions made from Plaintiffs' wages were not authorized or required by law.

151.     Through their knowing and intentional efforts to take unauthorized deductions from

Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting

New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

152.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

153.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL

§191.

154.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)      Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)      Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)      Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)      Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(e)      Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(j)      Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(k)      Awarding Plaintiffs damages for the amount of unpaid minimum wage and for any improper deductions or credits taken against wages as applicable

(l)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(m)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(n)      Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(o)       Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(p)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal

is then pending, whichever is later, the total amount of judgment shall automatically increase by

fifteen percent, as required by NYLL § 198(4); and

> (q)      All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

September 3, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:       /s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

August 5, 2021

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                       Raul Serrano

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:                   _____

Date / Fecha:                        5 de agosto 2021                   _

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

August 6, 2021

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Nicholas Alvarez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     6 de agosto 2021

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 5, 2021

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Neftali Baten
Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:          5 de agosto 2021

*Certified as a minority-owned business in the State of New York*